**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **VERNON KING, JR.** | § | |
| **Petitioner** | § | |
| | § | |
| **VS.** | § | **C.A. NO. C-05-395** |
| | § | |
| **DOUG DRETKE, DIRECTOR,** | § | |
| **TEXAS DEPARTMENT OF CRIMINAL** | § | |
| **JUSTICE–INSTITUTIONAL DIVISION,** | § | |
| **Respondent** | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Institutional Division, ("TDCJ-ID"), and currently is incarcerated at the McConnell Unit in Beeville, Texas. The actions about which he complains occurred on the Darrington Unit in Brazoria County, Texas.  Proceeding *pro se* and *in forma pauperis,* petitioner filed this habeas corpus petition pursuant to 28 U.S.C. §  2254 on August 3, 2004 (D.E. 1).  Petitioner makes the following due process claims in reference to a disciplinary hearing which resulted in the imposition of punishment:  (1) False testimony was given; (2) The charges were brought in retaliation for his having exercised his right of access to court and because he had filed a grievance regarding a prison organization known as the Blue Bandanas; (3) He was not allowed to present witness testimony and (4) There was insufficient evidence to support the finding of guilt.

Respondent filed a motion for summary judgment on November 15, 2005 (D.E. 12) to which petitioner responded on December 5, 2004 and January 17, 2006 (D.E. 17-22).

## BACKGROUND

Petitioner currently is serving a life sentence for murder with a deadly weapon (D.E 1, Ex. A).  He does not complain about his holding conviction, but challenges the results of a

disciplinary hearing.  In disciplinary case number 20050151458 petitioner was accused and found guilty of threatening to inflict harm on an officer when he stated to Sergeant Ahmed Boateng, "I will beat your ass anytime this door is open." (Disp. Hrg. Recs., D.E. 13, p. 1).

In the offense report, Boateng, the charging officer, wrote that on January 29, 2005, petitioner created a disturbance by yelling loudly that he was going to burn and flood the line if he did not receive his medication.  Boateng went over to talk to him and petitioner became aggressive and threatened to beat him up anytime his cell door was open.  He also raised his hands and put a closed fist close to Boateng's face and threatened any officer who went on the floor to feed the inmates (Disp. Hrg. Recs., D.E. 13, p. 2).  During the pre-hearing investigation and at the hearing, petitioner maintained that he did not threaten the officer and that his door was open when they spoke (Disp. Hrg. Recs., D.E 13, pp. 5-7, 12).

At the hearing, the charging officer testified by telephone that the computers were down for two days and the offenders needed a medical pass to go to the medical clinic.  Petitioner was using vulgar language and "getting in [Boateng's] face."  Boateng tried to move petitioner but petitioner said he would kick Boateng's ass (Disp. Hrg. Recs, D.E. 13,  p. 6).  Submitted into evidence were three written statements by witnesses who corroborated Boateng's version of events (Disp. Hrg. Recs., D.E. 13, pp. 8-11).

Petitioner was found guilty based on the testimony of the charging officer and the statements of the other witnesses.  He was punished with loss of 30 days of commissary and recreation privileges and was ordered to stay in Line Class 3 (Disp. Hrg. Recs., p. 1).

Petitioner filed a Step 1 grievance complaining about the results of the disciplinary hearing on May 26, 2005 and the warden responded that the hearing results were justified and

2

would not be overturned (Disp. Grv. Recs. D.E. 13, pp. 1-2).  Petitioner filed a Step 2 grievance

on July 13, 2005 and received the same response from the assistant administrator for offender

grievances (Disp. Grv. Recs., D.E. 13, pp. 3-5).  In addition, petitioner had filed another Step 1

grievance complaining of the same disciplinary hearing, but it was returned to him because it

was redundant (Disp. Grv. Recs., D.E. 13, pp. 6-7).

In his motion for summary judgment, respondent argues that petitioner is not entitled to

relief because he did not lose any good time credits and also because he is ineligible for release

to mandatory supervision.  Respondent reserved the right to argue about whether petitioner has

exhausted his administrative remedies and also about the procedural default doctrine related to a

failure to exhaust.

**APPLICABLE LAW**

**A.  Due Process Rights**

In order to be granted a writ of habeas corpus, a petitioner must show that he is in

custody in violation of the Constitution, laws or treaties of the United States.  In Sandin v.

Conner, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S.

Supreme Court described the limited instances in which prison inmates can make out a claim that

a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were
> correctly established and applied in [Wolff v. McDonnell, 418 U.S. 539, 94  S.Ct.
> 2963 (1974)] and [Meachum v. Fano, 427 U.S. 215, 96  S.Ct. 2532 (1976)].
> Following Wolff, we recognize that States may under certain circumstances create
> liberty interests which are protected by the Due Process Clause.  But these
> interests will be generally limited to freedom from restraint which, while not
> exceeding the sentence in such an unexpected manner as to give rise to protection
> by the Due Process Clause of its own force, nonetheless imposes atypical and
> significant hardship on the inmate in relation to the ordinary incidents of prison
> life.

3

Id. (internal citations omitted).  The Supreme Court held in Sandin that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, 515 U.S. at 486, 115 S.Ct. at 2301.  The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody.  Id.

In this case, petitioner did not lose any good time as a result of the disciplinary hearing. To the extent he is complaining that having to stay at Line Class 3 will affect his parole eligibility, he fails to state a basis of relief.  Generally a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on the amount of time he is in custody.  Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests."  Luken v. Scott, 71 F.3d 192 (5th Cir. 1995)(citing Meachum v. Fano, 427 U.S. 215, 229, n. 8, 96 S.Ct. 2532, 2540, n. 8, 49 L.Ed.2d 451 (1976)), cert. denied sub nom. Luken v. Johnson, 116 S.Ct. 1690 (1996).  "'Prisoners have no protectable property or liberty interest in custodial classifications.'" Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(citing Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998)).  See also Malchi v. Thaler, 211 F.3d 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating).  Accordingly, petitioner is not entitled to habeas corpus relief based on his line class status.

In addition to the parole scheme in Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional

4

division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division.  Madison v. Parker, 104 F.3d 765, 768 (5ᵗʰ Cir. 1997) (citing TEX. CODE CRIM. P. ANN. art. 42.18 § 2(2)).  Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date.  TEX. GOV'T CODE ANN. §508.147 (Vernon 2002).

The Fifth Circuit has determined that prior to September 1, 1996, the mandatory supervision program created a constitutional expectation of early release.  Malchi v. Thaler, 211 F.3d 953, 957-958 (5ᵗʰ Cir. 2000).  The mandatory supervision scheme was revised in 1998 and the language in the new section was designed to avoid creating a protected liberty interest. Hudson v. Johnson, 242 F.3d 534, 536, n. 1.  However, despite the apparent intent of the legislature, the Fifth Circuit has not yet decided whether the loss of good time credits implicates due process concerns under the current statute, but has assumed that it does.  Id. at 536.  Also, the Texas Court of Criminal Appeals has held that the language of the statute does create a liberty interest in mandatory supervision.  Ex Parte Geiken, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000).    Some inmates are not eligible for release to mandatory supervision because of the nature of their offense.  In his original petition, petitioner indicated that he is eligible for release to mandatory supervision (D.E. 1, p. 5).  Respondent avers that petitioner is not eligible for release to mandatory supervision because of his life sentence, citing Arnold v. Cockrell, 306 F.3d 277, 279 (5ᵗʰ Cir. 2002).  Respondent is correct.  "'A life-sentenced inmate is not eligible for release to mandatory supervision. . . . Under a literal reading of this law, it is mathematically impossible to determine a mandatory supervision release date on a life sentence because the calendar time served plus any accrued good conduct time will never add up to life'" Id. (citing

Ex Parte Franks, 71 S.W.3d 327, 328 (Tex. Crim.App. 2001).  Moreover, because petitioner was

convicted of first degree felony murder under § 19.02 of the Texas Penal Code, he is not eligible

for release to mandatory supervision.  TEX. CODE CRIM. PRO. Art. 42.18.  Because petitioner did

not lose any good time credits and because he is not eligible for release to mandatory

supervision, he has failed to make out a claim that he is entitled to habeas corpus relief.

## C.  Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus

proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. §

2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, the issue of whether he is

entitled to a COA will be addressed.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir.

2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a

petitioner relief is in the best position to determine whether the petitioner has made a substantial

showing of a denial of a constitutional right on the issues before that court.  Further briefing and

argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial

of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c)

requires an overview of the claims in the habeas petition and a general assessment of their

merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must

show that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong.  Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542

(2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could

disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his claims be dismissed on the merits. If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance of a COA.

## RECOMMENDATION

Based on the foregoing, it is recommended that respondent's motion for summary judgment (D.E. 12) be granted and petitioner's cause of action for habeas corpus relief be dismissed. It is further recommended that should petitioner seek a Certificate of Appealability, it be denied.

Respectfully submitted  this 27th day of January, 2006.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).

8